May it please the Court, my name is Ingrid Eggley, and I'm here on behalf of the appellant in this case, Mr. Tyree Thompson. There are three issues on appeal in this case, and I'd like to start with the third issue raised in our briefs, which is that the district court denied Mr. Thompson a fair trial in this case by failing to allow him to have a jury instruction on the lesser-included offense of simple possession. I think the parties are in agreement in this case that simple possession would indeed be a lesser-included offense. So the question on appeal for this Court is whether the evidence would permit a jury to rationally find him not guilty of the greater offense and guilty of the lesser offense of simple possession. Given the amount of drugs that was found on this man and the amount of money that was found and the scales and the gun, is it reasonable to think that this was – could a reasonable trier of facts find this was plain old possession rather than possession for distribution? Yes, Your Honor. How so? What's the evidence of that? In this case, I think the facts show that we have a very small amount of marijuana, only just about an ounce of marijuana involved. There was three small bags of marijuana, which would be consistent with personal use, containing two different kinds of marijuana. The total street value of the marijuana was only $150 to $200. There was also testimony at trial of the defendant's wife, that he was a habitual user of marijuana, that he smoked marijuana four to five times a day, that he used two different kinds of marijuana. There was also – I think this is critical – that there was absolutely no testimony from the police that he was actually seen trying to distribute this marijuana. So this was an entirely circumstantial case. And I think in response to your question, it's also important to stress here that the test here isn't whether no reasonable jury could have convicted him. It's whether any reasonable jury could have acquitted him. And so what we really have is a case here that's in the middle. It's not on either extreme where there's so much evidence that it's overwhelming. We're not – we're not attempting to argue that no reasonable jury could have convicted him, that it was impossible for a jury to convict him. We're not arguing sufficiency of the evidence here. What we're arguing is that this is a case that's in the middle, where it's clearly in the province of the jury to make the decision whether this was a case where they could convict him on possession or convict him on distribution. And by denying the jury that decision – You asked for a – for a lesser-included instruction? Yes. And what did Judge Reel, he just rejected it out of hand, or did he make some comment about the state of the evidence? Without comment, it was – it was denied. Well, in your – in your summary of the evidence in response to Judge Bayh's question about, well, what evidence was there to support the instruction, you mentioned that, well, he had – I forgot which it was – either the quantity or the fact that it was in three baggage, and you said, and that's consistent with personal use. Now, what – is there any direct evidence that it's consistent with personal use, or that's an inference you draw from the other evidence? Well, I think that there was evidence from the wife's testimony that he did use different types of marijuana and that he was a habitual user of marijuana. So a jury – it would have been a permissible inference of the jury to infer that this was consistent with what they heard regarding his usage patterns. Was she qualified as an expert to the use – growth, use, and amounts of personal use? No, she was not. But that is tied to the separate issue that's under appeal in this case, which is that Mr. Thompson was further denied the right to a fair trial in this case by denying him the ability to have an expert witness testify in this case. That expert witness would have testified that the amount of marijuana and the usage of a scale in this case was consistent with personal use, that containing the marijuana in separate bags and having different kinds is also consistent with personal use. And it's our argument on appeal that denial of that expert witness was an abuse of discretion in this case. Was that expert about to testify concerning the large amount of money found on the defendant or the firearm? His – his testimony was – was limited to four separate issues, which were – which were described to the court as terms of the issues that he would testify on. He would have testified that 32 grams of marijuana is consistent with personal usage. Second, he would have testified that it's not uncommon to use separate bags and that – that there were indeed two different types of marijuana found in the car and also that it's not unusual for purchasers of marijuana to carry scales with them so that they're not ripped off when they're making a purchase of marijuana. So his testimony was narrow – narrowly tailored to address solely those issues on which our position is that he was qualified to testify, given his extensive experience in the field of marijuana, having studied it since 1988, having published on the topic, and having testified as an expert witness in approximately 95 or 100 cases. The court precluded him from testifying because he had no experience in law enforcement. Was that the primary reason or was it some other reason? Well, I think there's two different positions that are – are – are brought forth in the briefs. It's our position that the reason why the court denied the expert the ability to testify was because Mr. Thompson exercised his Fifth Amendment right to remain silent. That is the position of the court that's articulated prior to the trial. It's also articulated during the trial. At the end – at the end of the testimony in the case, there was a brief voir dire that was held by the court at the request of the government. It's the government's position that the reason why the expert was not allowed to testify was under the Dalbert factors. We would say that whatever this court's decision is, in terms of factually finding what was the reason for the court's decision, that that decision was an abuse of discretion. What kind of – what kind of Dalbert findings did he make, the judge make? The government argues that he made three different decisions. And we – we explain in our papers that we do not believe that these were explicitly made. But even assuming that they were made, we think that they're insufficient. The first one is being that there wasn't a sufficient factual basis for the opinion because he hadn't met the defendant. Because what? Because he had not met the defendant or discussed the case – discussed the defendant's usage patterns with the defendant prior to testifying. We would say that the police officer who was allowed to testify as an expert witness also had not discussed usage patterns with the defendant prior to being allowed to testify on the exact same issue. Mr. Conrad's testimony was to be testimony generally regarding information that he was given, regarding the amount of marijuana that was at usage – that was at issue, the types of marijuana, and the fact that a scale was found. I think the second thing that the government argues is that because of Mr. Conrad's political associations, that he was somehow unqualified. And we – we argue that that goes to bias. And that's something that the government would be fully able to cross-examine the expert regarding at trial. And it would be something that the jury could – When you say political affiliations, you mean like she was apparently, like, in favor of legalizing marijuana, right? That's correct, Your Honor. That's correct, Your Honor. And we say that that would go to the weight of the testimony, and that the government would be fully able to cross-examine him regarding those issues. Wasn't there also a comment of the failure of Mr. Conrad to have any knowledge or expertise as to the marketing of illegal marijuana? He knew about growing. He knew about smoking. He knew all about the good things that marijuana does, according to him. But he didn't know the difference between what a person on the street uses and a person sells. Isn't that the problem? I mean, he may be a user expert, but he's not a marketer expert. I think the comments that were made by the Court was that he wasn't someone with law enforcement experience. And it's argued that that is too narrow of a view of the type of expert who could testify in this case. Law enforcement experience tells you, if you've been involved in arrests of dealers, how much dealers usually carry around in cash and stash, right? I think that's correct, but I have a few points in response to that. One is that he does have experience in his resume, which was taken as part of the record in observing law enforcement officers testify, in being involved in criminal cases. So he does have some experience in that area. And secondly, his testimony, again, was limited to the four areas that I've specified. And finally, there were factual findings made by the judge, several of them, that this was a witness who knew a lot about cannabis, who's someone who has a lot of experience in the growing and processing of marijuana, and also a lot of experience in the purchase and personal use of marijuana. And that's on page 144 of the record. And I think that those factual findings are sufficient to make him someone who could testify regarding exactly that, the personal usage of marijuana in this case. I think you're out of time. We'll give you two minutes anyway. Thank you. Good morning, Your Honors. Brian Hostadt for the United States. You've got really an uphill climb on the failure to instruct on possession. I agree that it's not an easy argument for me to be making, Your Honor. What I would like to encourage is, I mean, the inquiry here, the government agrees with the defense that simple possession is a lesser included offense to possession with intent to distribute. The inquiry is whether the district court abused its discretion in concluding that no rational jury could have found the defendant guilty solely of simple possession rather than possession with intent to distribute. The government believes that the evidence in this case would not support a finding by a rational jury of simple possession for two reasons. The first is that there was no evidence in this case of personal use. While that's the evidence that the defendant proffered, in this case, the agents are the... What do you mean by no evidence of personal use? You mean no one saw him actually smoking it? Well, there was no direct evidence either way. The government acknowledges that. But in this case, there was no marijuana usage paraphernalia that was recovered from the car. The canine dog who examined the car found no such add... Well, you had the testimony of the wife that he's a user. Isn't that evidence that he was, you know, personal use? There was no evidence as to that, as to the night that he was arrested, that he was personally using at that particular time. In fact, the evidence... What do you mean? If a person carries marijuana, you can only carry it if you're going to use it that night? You can't keep it for tomorrow? Well, the evidence that the wife testified to was... You said there's no evidence of personal use. I'm saying there was evidence of personal use. The wife testified to it. In that evidence, I apologize if I overspoke, Your Honor. What I was getting at by my statement was that while the wife testified there was personal use, the evidence from the police officers and from the examination of the car, the evening of... There's no direct evidence of distribution either. There's no direct. Only circumstantial evidence. All right. So in the light of that, there's only circumstantial evidence going both ways and go either way. Wasn't he entitled to an instruction of the lesser-included offense? Not given the entire panoply of evidence, of circumstantial evidence of distribution in this case. The fact that he had cash of various denominations in his car, $1,200 worth, cash of various denominations on his person. The fact that there were three... That the marijuana was housed in various bags in a Taco Bell to-go bag. There were three bags of marijuana, two different types, plus an empty bag. The fact that there was a scale that was there. There was a gun within reach. All of that evidence... That would be strong evidence, you know, that, you know, you can argue to the jury that from which you can infer the possession was for sale. But that's not the only reasonable inference from the circumstances. Well, I think that... Perhaps the strongest reason why the defendant wasn't entitled to that instruction was because the judge refused to allow his expert to testify, right? On the same subject that your expert testified on. Well, I can get to that issue if the Court would like me to jump over to that one. But if I may finish the discussion about the lesser-included instruction, the government's position is simply that the test is whether the jury rationally could conclude. Now, the wife did testify. There was her testimony. Her testimony in the government's view was substantially impeached, not only as to, you know, as to other collateral matters regarding the defendant, but... It's a question of credibility. Right. But also as to the fact that, again, the officer's the night of the occasion. You know, the wife testified that he was using marijuana four or five times a day, that he was always high. Officer Melizzo, in the rebuttal part of his testimony, stated that when he encountered the defendant that night, no evidence at all that he was high. He appeared to be sober to the officer, which was... And that's kind of, I think, what I was getting at. And again, I apologize if I overspoke about the fact that there was no personal use, at least as to that night. The other point that I wanted to make regarding the lesser-included instruction issue is in rereading Keeble, that decision actually, and it occurred to me in rereading that case, that what we're talking about with the lesser-included instruction is a violation of Federal Rule of Criminal Procedure 31. It's a statutory violation. The Supreme Court in Keeble actually noted that there was not a due process violation at issue, that this is not an error of constitutional magnitude. As a result of that, both the defendant's request for a harmless disevaluation that's basically a structural error for automatic reversal, and even the government's request for an analysis of harmless beyond a reasonable doubt appear to be the wrong standard to be used. When there are nonconstitutional errors or rules-based errors, which this appears to be, the test is whether it's more probable than not that the error was harmful, which is a lesser standard than the harmless beyond a reasonable doubt. And the government would submit that even if it's possible to conclude based on the wife's testimony that a rational jury might have or could have concluded that he was engaging only in civil possession, that it's not more probable than not that they would have done so, and that even if this Court concludes perhaps an instruction was warranted, that it did not rise to the level of a reversible error as a violation of Rule 31. Now, with respect to Judge Tashima's question about the expert, the district court's findings in this case were not exactly clear as to the precise basis upon which he was ruling. At the early part of the trial, he talked about the fact that the defendant had not taken the stand, but the Court went on to hold a voir dire hearing. But he also mentioned that later. He did. He mentioned it midway through the trial, and then there was a voir dire hearing. And after the voir dire hearing, the Court made two statements, both that he felt the expert might be biased and that he did not satisfy. You acknowledge, don't you, that bias is not a reason for disqualifying an expert? I do. I also acknowledge that the district court's statements about the fact that the defendant needed to testify first and lay a foundation would not have provided a basis to exclude the expert. I think we can see that is also incorrect. The government's argument here is that the district court, at a minimum, relied on three different reasons, and that this Court has the ability to affirm on the basis of any of those reasons, and the district court did not appear to tie them all together. The best reason is that the district court did not abuse its discretion in finding What's that? That's a conclusion. What's the factual basis? The factual basis is after the voir dire hearing, the district court held that this expert, that Mr. Conrad, did not satisfy the Daubert standards. And much as this panel was questioning and thinking about the dispute. No, because why? Aside from the fact that he thought he didn't have law enforcement experience. But was there another reason? Well, the district court acknowledged that the expert in this case had expertise on cannabis, had expertise on personal use, and the law enforcement experience that the district court. And he also mentioned as well that he didn't have experience with scales and guns and drugs. So the district court appeared to be getting at the fact that while this expert knew about personal use, this expert did not know the other side of the coin, did not know about distribution for other than personal use, and that because he lacked that ability to compare and contrast, his testimony would not have been helpful to the jury. That appears to be, I think, a fair synthesis of what the district court was getting at because the district court did not make clear extensive helpful findings on appeal. Even if he knew only about the personal characteristics of use and didn't know about the characteristics of distributors, in other words, he knew about the user but not the retailer, right? Shouldn't he be able to testify these are consistent characteristics with use? Does he have to also say, and they are inconsistent with characteristics of distribution? I think what the district court was getting at with respect to that was the fact that testifying solely to the, this is consistent with personal use because I've talked to a lot of personal users, would not have been helpful to the jury. Why not? It would have been helpful to the jury. It could have been cross-examined. Yeah, but you don't know anything about distribution. That's true. And the jury may have accepted it or not accepted it, but the fact that some relevant evidence can be procured from this witness should be the guide to the judge, should it not? Well, I think that what the judge was getting at is that this expert did not have the threshold, that that type of testimony, that type of evidence was not something that you needed an expert to testify to. In fact, and as with respect to those various areas that the expert was going to testify to, the defense argued them just solely on the basis of the evidence that was presented at trial about the fact that 60 to 70 cigarettes was consistent with personal use, that the scale in this case was not inconsistent with personal use, and that his qualifications only as to personal use did not provide any additional sort of expert knowledge that would have been helpful to the jury, that the jury could not have inferred on its own, solely on the basis of argument. And while the district court, again, would not have at all been abusing its discretion in allowing the expert to testify, the question is whether he abuses discretion in excluding it, and the government submits that there's a sufficient record based on the fact that he only, that this expert only had expert as to use, but not as to the ability to compare or contrast, and the fact that that use experience is something that the jury could have inferred on its own, that you didn't need an expert to testify to, that makes what the district court did here not an abuse of discretion. I don't know who the trial assistant was. You didn't try the case, did you? I did not try the case. But whoever it was, at some point, I had the impression, in a polite way, tried to tell Judge Real that he should let this expert testify, didn't he? I think the assistant was... No, the government didn't oppose this expert. The government opposed, the government wanted to make sure that this expert was subject to a voir dire, and that it was subject to a proper daubert, and I think that that is evident in the record, that the court did not, that the government did not accept the district court's finding that, well, you need to take this, the defendant needed to take the stand first. And what the government... The reason you wanted daubert, because you want to protect yourself from two things. One, his statement that, well, I'm not going to let the expert on until the defendant testifies. But after the daubert hearing, whoever was trying the case said, well, you know, we don't mind if this expert goes on, you know, we'll destroy him on cross in an instant, or something like that, right? I don't read it, I mean, I think there was some comment about the fact that he would be, quote-unquote, destroyed on cross, or something to that effect, but I think that what the... The government ultimately was arguing to the court various factors as to why it was appropriate to exclude this expert. But I think the government did acknowledge that the court could go either way on it, and the government acknowledges the same thing here, and that's why the only real question, and what I'm arguing to you is simply that the court did not abuse its discretion in keeping the expert off the stand. Unless there are any further questions about the motion to suppress or anything else, I'll submit. Thank you. I would just like to briefly respond to two points. One is the question of whether, even without the expert, there was still a doubt as to whether this was possessed for distribution or for sale. And on that, I would just highlight for the court that we did cite several cases in our briefs that have a various combination of drugs, guns, cell phones, ammunition, and in those cases, including U.S. v. Munger, U.S. v. Gibbs, U.S. v. Lucien, the circuit courts in those cases found that it was proper to, it was reversible to not have the lesser-included instruction. So even without the expert, we would submit that there was still at least a doubt as to whether that marijuana was possessed for distribution or for sale. And then I just wanted to briefly respond to the issue as to the standard of error that should be applied to the lesser-included instruction. There's been several different standards that have been proposed to the court. I think ultimately what standard is applied is really a red herring given that the decision in and of itself of whether or not it was error in the first place to not grant the lesser-included instruction requires the court to make a decision that a reasonable jury could have made a materially different decision. In other words, they could have acquitted him on the greater offense and convicted him on the lesser offense. And that in and of itself. Kennedy. Do you agree with counsel for the government that the proper standard of reviews, whether it's more probable or not, that the jury would have found that? I do not. I think that we have proposed as our, the Sixth Circuit standard in U.S. v. Munger, which holds that it would be, it's intrinsically type, harmful type of error, which would be structural error. Alternatively, we've cited to the only Ninth Circuit case that's on point, U.S. v. Crutchfield. And in that case, the Ninth Circuit held that it was reversible error, then the proper procedure was to automatically remand for a new trial with a properly instructed jury, although it didn't specifically. Are you saying Crutchfield treats it more or less as structural error? Exactly. It doesn't call it structural error, but it says. Exactly. It says that the proper standard is to automatically reverse. In their papers, the government cites to U.S. v. Rubio v. Real, which is harmless beyond a reasonable doubt standard. But again, whichever standard is applied, we would say that the standard is met and that reversal would be required in this case. Thank you. Thank you very much. The case just argued will be marked submitted. And we will go to the next case on the calendar, which is you're going to have to help me on the pronunciation here. Hu Tan Nguyen v. Sylvia Garcia. You got that right. It is Garcia. Is that what I got right?
judges: Siler , Tashima, Bea